**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **PATRICK JOSEPH CHAREST,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 10-067-CG-C** |
| | ) |
| **BILLY MITCHEM,** | ) |
| | ) |
| **Respondent.** | ) |

## ORDER

This matter is back before the Court following the Eleventh Circuit

Court of Appeals' order vacating the certificate of appealability ("COA") and

remanding this case for further consideration. (Doc. 101). The Eleventh

Circuit specifically directed this Court to "consider whether Charest has

made a substantial showing of the denial of a constitutional right, in

conformity with <u>Slack</u>." (Doc. 101, p. 2). After careful consideration, the Court

concludes Charest has not made a substantial showing of the denial of a

constitutional right, and a COA should not issue.

## BACKGROUND[1]

Patrick Joseph Charest is an Alabama prisoner in the custody of

respondent, Billy Mitchem. On March 14, 1995, a jury found Charest guilty of

first-degree rape, first-degree sodomy, and contributing to the delinquency of

a minor in the Circuit Court of Baldwin County, Alabama. (Appendix A, p. 15

---

[1] This is an abbreviated background of this twenty-year-old case. The facts
and procedural history are thoroughly described in the magistrate judge's
Report and Recommendation. (Doc. 63, pp. 1 – 33).

– 19).[2] The circuit court judge sentenced him in May 1995 to two consecutive life terms for the rape and sodomy convictions, and one year for the delinquency conviction. (Appendix A, pp. 6 – 10). The Court of Criminal Appeals confirmed his convictions on direct appeal. Charest v. State, 682 So. 2d 528 (Ala. Civ. App. 2005).

After being convicted of these crimes, Charest filed his first Rule 32 petition in state court in February 1998. Charest v. State, 854 So. 2d 1102, 1103 (Ala. Crim. App. 2002) overruled by Ex parte Jenkins, 972 So. 2d 159 (Ala. 2005). The Circuit Court of Baldwin County denied that petition, but the Court of Criminal Appeals remanded the petition and directed the circuit court to address certain ineffective assistance of counsel claims. Id. at 1106. Charest raised the basis of the present appeal – that the circuit court lacked jurisdiction to hear the case because the crimes occurred in Florida, not Alabama – in his initial Rule 32 petition. But as the Court of Criminal Appeals recognized, he did not assert this argument on appeal. Charest v. State, 854 So. 2d at 1105, n. 3 ("Those claims that Charest raised in his petition, but did not assert on appeal, have been abandoned."). After the circuit court addressed the ineffective assistance of counsel claims on

---

[2] Appendix A contains excerpts from the record of Charest's first habeas case, 03-CV-283-CB-D, including portions of the 1995 state court trial transcript. A hard copy of the entire trial transcript was filed as an exhibit during the proceedings in Charest's first habeas case, along with hard copies of Charest's post conviction motions, state responses, and state court orders. (03-CV-283-CB-D, Docs. 5, 11). Appendix A contains copies of the original record cited in this order to assist with reviewing this case.

remand, the court again denied the Rule 32 petition. The Court of Criminal Appeals affirmed that ruling. (Doc. 63, p. 17).

Charest next filed a petition for writ of habeas corpus in the Southern District of Alabama on May 8, 2003. (Case 03-cv-283-CB-D).  While that petition was pending, Charest filed a second Rule 32 petition in the Circuit Court of Baldwin County in February 2004. During circuit court hearings in 2005 related to that petition, Charest reached an agreement with the prosecutor and the judge where his delinquency conviction was set aside and his life sentences were ordered to run concurrently instead of consecutively as originally imposed. (Doc. 59-1; Doc. 62-1, pp. 84 – 91; pp. 95 – 105). In exchange for the sentence modification, Charest agreed to waive all pending claims in his second Rule 32 petition, with the "exception of his issue of whether the court had subject-matter jurisdiction over the actions complained of," because he alleged the crimes occurred in Florida, not Alabama.[3] (Doc. 62-1, p. 101).

---

[3] This Court does not condone bargaining with criminal defendants by offering sentence modifications in exchange for waiving legal claims. Additionally, this Court notes the trial judge erroneously believed the Circuit Court of Baldwin County did not have subject matter jurisdiction over Charest's misdemeanor charge and conviction. (Doc. 62-1, p. 100). This is incorrect, as the grand jury indicted Charest on felony and misdemeanor charges, bringing his entire case within the original jurisdiction of the Circuit Court. A copy of the indictment is included in Appendix A. See Appendix A, pp. 12 – 13. See also Ex parte City of Tuscaloosa, 636 So. 2d 692, 694 (Ala. Crim. App. 1993) (explaining that Alabama law provides "all misdemeanor and ordinance violations which arise from the same incident as the felony charge are within the exclusive original jurisdiction of the circuit court"); Ala. Code § 12-11-30; Ala. Code § 12-12-32(a)(2).

Also in 2005, the Southern District of Alabama denied Charest's first petition for writ of habeas corpus (Case 03-cv-283-CB-D; Doc. 16), which the Eleventh Circuit Court of Appeals later affirmed (Case 03-cv-283-CB-D; Doc. 25), because it was time-barred. (Case 03-cv-283-CB-D; Doc. 16, p. 1).

Charest filed a third Rule 32 petition in September 2006 (Doc. 62-6, p. 1), but he did not argue in that petition that the crimes occurred in Florida. (Doc. 62-6, pp. 2 − 3). The circuit court denied his petition, which the Court of Criminal Appeals affirmed in 2008. (Doc. 62-6, p. 5 − 6). Charest filed a fourth Rule 32 petition in 2009, which the circuit court also denied and the Court of Criminal Appeals affirmed. (Doc. 9-7).

Charest then filed his second habeas petition to initiate this case in February 2010. After careful consideration, this Court dismissed the petition with prejudice for failing to comply with 18 U.S.C. § 2244(b)(3)(A). (Docs. 10, 14). Charest filed a motion for a COA, which the Eleventh Circuit granted, as to the following question:

> Whether Charest's 2005 resentencing constituted a new and final judgment and, if so, whether the district court erred in finding that Charest's 28 U.S.C. § 2254 habeas petition was second and successive.

(Doc. 26, p. 4). The Eleventh Circuit eventually concluded that this Court failed to address Charest's argument that his 2005 re-sentencing constituted a new and final judgment. The Eleventh Circuit thus vacated and remanded the case to this Court for further consideration. (Doc. 29, p. 3).

Upon remand, this Court appointed legal counsel for Charest, and

established a briefing schedule to address the issues identified by the

Eleventh Circuit. (Doc. 32). After the parties briefed the issues presented on

remand, the magistrate judge issued a report that recommended denying the

petition for writ of habeas corpus on the basis that Charest abused the writ

and because the second petition was time-barred. (Doc. 63, pp. 55 – 56). The

magistrate judge also concluded that Charest's 2005 sentence modifications

were a "new judgment" in accordance with Magwood v. Patterson, 561 U.S.

320 (2010). (Doc. 63, pp. 34 – 36). This Court, however, declined to adopt the

portion of the magistrate judge's report and recommendation that discusses

and concludes that the 2005 sentence modification amounted to a "new

judgment." (Doc. 86, p. 5). This Court adopted the remainder of the report

and recommendation.  (Doc. 86, p. 5).

Charest appealed this Court's order dismissing his 28 U.S.C. § 2254

petition on jurisdictional grounds and, in the alternative, denying it as an

abuse of the writ and untimely. (Doc. 101, pp. 1 – 2). Without considering

Charest's underlying claim that the crimes occurred in Florida, this Court

granted a COA on the following question:

> Whether Charest's current habeas petition was a second or
> successive petition and subject to dismissal for lack of
> jurisdiction, or whether his 2005 sentence modification did
> not constitute a new and intervening judgment which,
> pursuant to Magwood v. Patterson, 561 U.S. 320, 130 S. Ct.
> 2788 (2010), would restart the one-year period for filing a
> habeas petition.

(Doc. 96; Doc. 101, p. 2).

In a brief order, the Eleventh Circuit vacated the COA, and remanded

the case for this court to consider whether Charest has made a substantial showing of the denial of a constitutional right, in conformity with Slack v. McDaniel. 529 U.S. 473, 484 – 85 (2000). The Eleventh Circuit stated this Court's COA "fails to indicate that jurists of reason would find Charest's underlying jurisdictional arguments debatable, insofar as he needed to make a substantial showing of the denial of a constitutional right."[4] (Doc. 101, p. 2). Pursuant to the Eleventh Circuit's instruction, this Court now considers whether Charest has made a substantial showing of the denial of a constitutional right.

## ANALYSIS

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (numerals and emphasis added). Therefore, determining "whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional

---

[4] Charest moved the Court to brief the question presented on remand. (Docs. 102, 104). Charest has thoroughly briefed the question of jurisdiction through his Rule 32 petitions, his first federal habeas petition, and this matter. Further briefing on the location of the Alabama state line, the indictment, trial, and issues related to jurisdiction would be redundant and unnecessary. Therefore, Charest's motions for additional briefing (Docs. 102, 104) are due to be **DENIED**.

claims and one directed at the district court's procedural holding." Id. at 484
– 85. In this case, the Eleventh Circuit has directed this Court to re-examine
the first component, and decide whether Charest raised a valid claim of the
denial of a constitutional right about which reasonable jurists may disagree
based on his argument that his crimes occurred in Florida, not Alabama.

To make "a substantial showing of the denial of a constitutional right,"
28 U.S.C. § 2253(c)(2), Charest must demonstrate "that reasonable jurists
could debate whether (or, for that matter, agree that) the petition should
have been resolved in a different manner or that the issues presented were
adequate to deserve encouragement to proceed further." Miller-El v. Cockrell,
537 U.S. 322, 336 (2003) (citation and quotations omitted). Although Charest
need not demonstrate his appeal will succeed to be entitled to a COA, he
must "prove something more than the absence of frivolity or the existence of
mere good faith." Id. at 338. Charest fails to make that showing here, which
is supported by the fact that each jurist reviewing this case has agreed that
Alabama had jurisdiction to prosecute Charest, and there is no debate that
the claim should have been resolved in a different manner.

A review of the testimony and evidence offered at trial, along with
twenty years of post-conviction motions, briefs, and court orders, help confirm
that Charest's argument is without merit. During Charest's trial in 1995,
multiple witnesses testified that the crimes at issue took place in Alabama.
Specifically, Tina Charest (Charest's daughter), "A.C." (victim), Lawrence

Griffith (Baldwin County Sheriff's Department), and Crystal O'Donovan (witness) each testified about the events occurring in Alabama. (Appendix A, pp. 20 – 101). No objections were raised at trial regarding the testimony that the crimes occurred in Alabama, and the jury found the evidence sufficient to convict Charest of rape and sodomy.[5]

Nevertheless, after his conviction Charest has argued that the "State's Indictment assumes Alabama had Jurisdiction, but no proof at trial." (Appendix A, p. 113). Charest has also argued that the Florida line is miles away from the Perdido River and where the crimes occurred because of natural changes over time. (Doc. 63, pp. 7 – 10; Appendix A, p. 114). These arguments fail. The Perdido River forms the boundary between Alabama and Florida. Ala. Const. I, § 37; Ala. Code § 41-2-4; Fla. Const. art. II, § 1; Fla. Stat. Ann. § 6.081. There is no dispute between Alabama and Florida regarding the location of the state line. The bridge Charest traversed with A.C. crosses the Perdido River, and at trial four witnesses testified Charest and A.C. were located on the Alabama side of the bridge when the crimes occurred. (Appendix A, pp. 20 – 101).

However, assuming for the sake of argument that the crimes took

---

[5] Charest's convictions also show that the jury found beyond a reasonable doubt that the crimes occurred in Alabama. The State need not show by direct evidence that the crime was committed in Baldwin County, Alabama; circumstantial evidence will suffice. See Lewis v. State, 461 So. 2d 9, 11 (Ala. 1984); Allen v. State, 374 So. 2d 447 (Ala. Cr. App. 1979). However, the record shows that the State did present direct evidence concerning the location of the crime and testimony from four individuals stating that the incident took place in Alabama.

place on the Florida side of the bridge, the Circuit Court of Baldwin County would still have jurisdiction to hear Charest's case. Charest does not deny that he and the victim crossed back and forth between Alabama and Florida on the night in question. (Doc. 63, p. 3, n. 5). As the United States Supreme Court explained in <u>Heath v. Alabama</u>, the doctrine of dual sovereignty would thus provide Alabama and Florida with jurisdiction to prosecute Charest. 474 U.S. 82, 88 (1985).

In <u>Heath</u>, the petitioner hired two men to kill his wife. In accordance with petitioner's instructions, the men kidnapped petitioner's wife from her home in Alabama. Her body was later found on the side of a road in Georgia. Petitioner pleaded guilty to "malice" murder in a Georgia trial court in exchange for a sentence of life imprisonment. Subsequently, he was tried and convicted of murder during a kidnapping and was sentenced to death in an Alabama trial court, which rejected his claim of double jeopardy. <u>Id.</u> at 84. The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed the conviction. The Supreme Court then affirmed the Alabama Supreme Court, explaining:

> The Constitution leaves in the possession of each State certain exclusive and very important portions of sovereign power. Foremost among the prerogatives of sovereignty is the power to create and enforce a criminal code. To deny a State its power to enforce its criminal laws because another State has won the race to the courthouse would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.

<u>Heath</u>, 474 U.S. at 93 (internal citations and quotations omitted). The

Supreme Court also acknowledged Alabama's criminal code includes a statute that provides:

> When the commission of an offense commenced in the State of Alabama is consummated without the boundaries of the state, the offender is liable to punishment therefor in Alabama; and venue in such case is in the county in which the offense was commenced, unless otherwise provided by law.

Id. at 85 (citing Ala. Code § 15-2-3). Accordingly, if a crime commences in Alabama it may be punished in Alabama regardless of where the crime is consummated. Id. Here, Charest began the sequence of events that led to his rape and sodomy convictions while traveling between Alabama and Florida. Thus even if the crimes ultimately occurred in Florida, as Charest argues, Alabama still had jurisdiction to try the case. The record, however, does not support Charest's contention that the crimes took place on the Florida side of the Perdido River.

The Court of Criminal Appeals has further noted that jurisdiction over a defendant "requires both personal and subject matter jurisdiction" and matters of "personal jurisdiction are waivable." (Doc. 62-14, pp. 7 − 8); see also Goulden v. State, 299 So. 2d 325, 326 (Ala. 1974) (jurisdiction requires personal jurisdiction of the parties and the subject matter to be adjudged). Charest appeared in the Circuit Court of Baldwin County and had his case tried by a jury, thus he waived any arguments concerning personal jurisdiction he may have tried to claim. See Boles v. State, 717 So. 2d 877, 881 (Ala. Crim. App. 1998) ("Personal jurisdiction is attained by a defendant's

appearance before the court."). Subject matter jurisdiction is a court's power to decide a case. Ex Parte Seymour, 946 So. 2d 536, 538 (Ala. 2006) (subject-matter jurisdiction refers to a court's "statutory or constitutional power" to adjudicate a case). In Alabama, circuit courts have subject matter jurisdiction over felony prosecutions. Id. at 539; see also Rothchild v. State, 558 So. 2d 981, 983 – 84 (Ala. Crim. App. 1989) (explaining the "subject matter" in the criminal setting is the crime itself, and circuit courts have jurisdiction over felony cases). Because Charest's indictment and trial included two felony counts, the circuit court had subject matter jurisdiction over his case. Ala. Code § 12-11-30; Ala. Code § 12-12-32(a)(2).

Apart from Charest arguing that his crimes occurred in Florida, there is no indication that jurisdiction in this case is otherwise defective. The indictment pertained to felony and misdemeanor charges, giving the circuit court jurisdiction to hear the case. Charest's argument that the boundary between Florida and Alabama does not rest in the Perdido River is without merit. As a result, the Circuit Court of Baldwin County had jurisdiction to preside over Charest's trial in 1995.

## CONCLUSION

After reviewing the extensive record in this case, and carefully considering Charest's argument concerning the trial court's alleged lack of jurisdiction, the Court concludes Charest does not raise a valid claim of the denial of a constitutional right. The record shows Alabama had jurisdiction to

try this case. The Circuit Court of Baldwin County, the Court of Criminal Appeals, and the Alabama Supreme Court have likewise concluded that Alabama had jurisdiction to try this case. Although jurists may debate whether the 2005 modification of Charest's sentence amounts to a new judgment (Doc. 86, pp. 3 – 5), jurists of reason would agree Charest has not stated a valid claim of the denial of a constitutional right based on his assertion that the border between Alabama and Florida is unclear.

Because the two components of <u>Slack</u> are not satisfied, a COA should not issue. Charest's motions for more briefing (Docs. 102, 104) are **DENIED**. Additionally, the Court again concludes that in the alternative, the writ is due to be denied because Charest has abused the writ and it is time-barred.

**DONE and ORDERED** this 31st day of August, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE